UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JONATHAN MARK THOMAS, )
)
Petitioner, )
)
v. ) No. 1:04-CR-7 / 1:08-CV-121
) Chief Judge Curtis L. Collier
UNITED STATES OF AMERICA, )
)
Respondent. )
)

# **M E M O R A N D U M**

*Pro se* petitioner Jonathan Mark Thomas ("Petitioner") filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Court File No. 71). Pursuant to the Court's Order (Court File No. 72), the United States filed a response (Court File No. 75). This Court initially sentenced Petitioner to 86 months in prison on July 29, 2005, after a jury convicted him on March 29, 2005 of one count of unarmed bank robbery in violation of 18 U.S.C. § 2113(a). Judgment was entered on August 9, 2005, and Petitioner's conviction and sentence were affirmed on direct appeal on May 4, 2007. *United States v. Thomas*, 223 F. App'x 447 (6th Cir. 2007). After the mandate from the Sixth Circuit was entered (Court File No. 70), Petitioner timely filed his § 2255 motion on May 12, 2008 (Court File No. 71).

Petitioner claims ineffective assistance of counsel, citing his attorney's (1) failure to investigate the actual availability of an alibi witness, (2) failure to investigate the authenticity of the photograph from the surveillance video, (3) failure to conduct pretrial discovery and locate an alleged alternate version of the surveillance video, and (4) violation of his speedy trial rights.

The Court finds the materials thus submitted, together with the record of the underlying

criminal case (1:04-CR-7), conclusively show Petitioner is not entitled to relief on any of the claims asserted in his petition. Accordingly, the Court will decide this matter without an evidentiary hearing, *see United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993), and will **DENY** Petitioner's motion for the following reasons.

I. **RELEVANT FACTS AND PROCEDURAL HISTORY**

The underlying facts supporting Petitioner's conviction are taken from the summary provided in the Sixth Circuit's opinion affirming Petitioner's conviction:

> On November 4, 2003, Valerie Carter was working behind the teller counter at the Chattanooga Area Schools Credit Union in Chattanooga, Tennessee. At about 10:00 a.m., a man walked up to the counter and told Carter, "Give me all your money, and don't move." Carter described the person as a black male, approximately six feet tall, of slim build, with an unkempt appearance and distinctive eyes and hair, and testified that he spoke in muffled tones "as if he had cotton in his mouth." Carter maintained eye contact, telling the man that she would have to move to get the money. The man instructed Carter to "hurry up." After Carter opened the money drawer, the man handed her a blue sack into which she placed approximately $ 487. The man then snatched the sack and left the credit union.
>
> The credit union had surveillance video cameras. The camera recorded a black and white image of the man's face as well as his clothing. The man was wearing a horizontally striped shirt.
>
> Several days after the robbery, Carter was shown a photo lineup. Carter identified Thomas in one of the photographs as the robber. Carter also identified Thomas in the courtroom as the man who robbed the credit union on November 4, 2003.
>
> Officer Matthew Hennessee, employed with the Chattanooga Police Department and assigned to the FBI Safe Streets Task Force, responded to the credit union shortly after the robbery. Officer Hennessee watched the surveillance video and recognized the robber depicted on the videotape to be Thomas, with whom he was familiar. Officer Hennessee testified that he had previously observed or had contact with Thomas on ten different occasions.
>
> Officer Hennessee advised FBI Special Agent Jim Melia, coordinator for the Safe Streets Task Force, that he had identified Thomas as the person who had robbed the

2

credit union. . . . On November 6, 2003, Agent Melia interviewed Thomas at the Chattanooga FBI office. Thomas was read his Miranda warnings and signed a waiver of rights form. Thomas denied having anything to do with the robbery.

During the interview, Thomas was shown a black and white digital photograph taken of the robber from the surveillance video at the credit union. Thomas stated "that it looked just like him but that it wasn't him," and added, "I've got a shirt like that, but it's blue and maroon; it's not green." Pursuant to their investigation, law enforcement knew that the shirt that the robber was wearing had blue and green stripes; however, the photograph that Thomas was shown was in black and white.

Agent Melia questioned Thomas about his whereabouts during the hours preceding the robbery. Thomas offered six different alibis in the course of his interview. The FBI task force followed up on these potential alibis but was unable to corroborate any of them.

After investigating Thomas' alibis, Agent Melia visited him at the jail, advising Thomas that the agents had been unable to confirm any of Thomas' alibis. Thomas stated that this was due to the fact that at the time of the robbery he was at his mother's residence with a woman named Pat Broom. Agent Melia told Thomas that Broom had already been interviewed and had denied that she was with Thomas the morning of the robbery. Thomas responded, "I'll whip her." Thomas indicated that he had sent Broom a letter, had telephoned her, and had enclosed a surveillance photo of the robbery.

After the United States rested its case, Thomas called one witness, his brother Joseph Thomas. Joseph Thomas indicated that on the day of the robbery he was in Chattanooga on military leave, staying at his mother's home. Joseph Thomas testified that he was with Thomas at their mother's house the morning of the robbery and that Thomas was in his bedroom with Pat Broom around the time the robbery occurred.

On cross-examination, Joseph Thomas conceded that after hearing that Thomas had been charged with the robbery of the credit union, he did not contact any law enforcement authorities to advise them that he could vouch for Thomas' whereabouts around the time that the robbery occurred. The United States produced a copy of Joseph Thomas' military leave form for October 27 through November 6 of 2003, on which he listed his leave address as Arizona.

In rebuttal, the United States called Mickey Milita, the director of guest relations at Erlanger Medical Center. Milita, who was familiar with Thomas, testified that he saw Thomas around 8:30 a.m. on November 4, 2003, at the hospital asking for money. Milita testified that Thomas was wearing a golf shirt that was fairly dirty, bluish-green in color, with horizontal stripes.

> On March 29, 2005, the jury returned a verdict of guilty as to the one count charged, unarmed bank robbery in violation of 18 U.S.C. § 2113(a).

*Thomas*, 223 F. App'x at 449-50.

At sentencing, this Court found Petitioner's total offense level was 24. This level reflected a base offense level of 20, a 2-level enhancement for robbing a financial institution, and a 2-level enhancement for Petitioner's attempt to suborn perjury from a potential alibi witness while he was incarcerated awaiting trial. Petitioner's criminal history category was IV, and the Guideline range was 77 to 96 months. The Court sentenced Petitioner to 86 months incarceration, with 3 years supervised release.

Petitioner appealed his sentence as well as his conviction. The Sixth Circuit affirmed this Court's rulings. *See id*. at 458. Petitioner now brings this motion under § 2255 claiming he was denied his constitutional right to effective assistance of counsel.

## II. STANDARD OF REVIEW

Section 2255 of Title 28 of the United States Code permits a prisoner in custody under sentence of a federal court to move the court which imposed the sentence to vacate, correct, or set aside the sentence, on the grounds:

> the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . .

28 U.S.C. § 2255. This Court has jurisdiction under 28 U.S.C. § 1331. Petitioner has the burden of establishing any claim asserted in the petition. *See Bowers v. Battles*, 568 F.2d 1, 5 (6th Cir. 1977); *Mayes v. United States*, 93 F. Supp. 2d 882, 886 (E.D. Tenn. 2000). It is a "well-settled

principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (citing *United States v. Frady*, 456 U.S. 152, 166 (1982)).

Where a constitutional error is alleged in order to obtain relief under § 2255, the record must reflect a constitutional error of such magnitude it had a substantial and injurious effect or influence on the proceedings. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). In order to prevail on a § 2255 motion alleging a non-constitutional error, a petitioner must show a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). Thus, "[a] motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

## III. DISCUSSION

Petitioner's § 2255 motion asserts four grounds upon which he contends his counsel was so ineffective as to constitute constitutional error: (1) counsel's failure to investigate the actual availability of an alibi witness, (2) counsel's failure to investigate the authenticity of the photograph from the surveillance video, (3) counsel's failure to conduct pretrial discovery and locate an alleged alternate version of the surveillance video, and (4) counsel's violation of his speedy trial rights. Petitioner's counsel at trial, Mr. Anthony Martinez, has submitted an affidavit in support of the

government's position (Court File No. 75-1).

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden, and if either prong is not satisfied the claim must be rejected, stating:

> Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.  Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

*Id.* at 697.

### A. Failure to Investigate the Actual Availability of an Alibi Witness

In his first claim for relief, Petitioner claims his "[c]ounsel failed to investigate the actual availability of an Alibi Witness, of whom I advised him.  As a result the jury never heard from my alibi witness, and my defense was eviscerated" (Court File No. 71, p. 5).

Petitioner does not identify the alibi witness of whose existence he allegedly informed his counsel, or provide any details as to this witness's potential testimony.  When a Petitioner files a § 2255 motion, he must set forth facts entitling him to relief.  *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972).  "Conclusion, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing."  *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961).  Moreover, by failing to provide any details on this claim, Petitioner has likewise not met his obligation to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Strickland*, 466 U.S. at 688.

Nonetheless, despite the factual thinness of Petitioner's motion, Petitioner's trial counsel Mr. Martinez has submitted an affidavit describing in detail his investigation of two potential alibi witnesses (Court File No. 75-1). According to Mr. Martinez's sworn statement, Petitioner alerted him to the existence of two possible alibi witnesses, Joseph Thomas and Patricia Brown (*id.* at ¶ 3). Mr. Martinez was able to locate Joseph Thomas, and in fact Joseph Thomas testified at Petitioner's trial as an alibi witness. However, Mr. Martinez was not able to locate Ms. Brown, despite going to her last known address on six occasions.

It appears Patricia Brown is the legal name of Pat Broom, about whom testimony was heard at trial and sentencing. *See Thomas*, 223 F. App'x 450-51. Ms. Broom is the individual Petitioner was recorded speaking with on the telephone, attempting to suborn perjury from her as an alibi witness. *Id.* at 451. According to Agent Melia, who listened to the recording, Ms. Broom refused Petitioner's request, telling him, "I wasn't with you that day." *Id.* Agent Melia further testified at sentencing he had interviewed Ms. Broom, and she denied having been with Petitioner on the day of the robbery.

The record demonstrates Mr. Martinez did not "fail" to investigate the availability of an alibi witnesses. To the contrary, he located one alibi witnesses and put him on the stand, and diligently sought out another alibi witness. These efforts are clearly "reasonable under prevailing professional norms." *Strickland*, 466 U.S. at 688. Moreover, the record indicates the "alibi witness" Petitioner's vague motion most likely references, Patricia Brown, *aka* Pat Broom, would not actually have been an alibi witness, but would have testified she was not with Petitioner on the day of the robbery. Thus, Petitioner can not show that his counsel was deficient in investigating the actual availability of an alibi witness, nor that his defense was prejudiced by his counsel's failure to find her.

Accordingly, the Court holds these claims do not support a finding of ineffective assistance of counsel.

**B. Failure to Investigate the Authenticity of the Photograph**

In his second claim for relief, Petitioner claims his "[c]ounsel failed to voir dire the purported photograph of the robber in this case. Had counsel done so, the photograph would not have been allowed into evidence, nor seen by the jury, as it was altered. Further, counsel failed to call a defense expert who would have testified that the photograph was in fact altered" (Court File No. 71, p. 6).

Petitioner provides no details about the nature of the supposed alteration of the photograph showing him robbing the credit union. However, contrary to Petitioner's claim, the record shows Petitioner's counsel did in fact investigate the authenticity of the photograph obtained from the credit union's security camera, and also consulted with an expert regarding its accuracy. In his affidavit, Mr. Martinez reports he "reviewed all of the bank photographs with Mr. Thomas" (Court File No. 75-1, ¶ 5). Moreover, on December 14, 2004, Petitioner's counsel sought, and ultimately obtained, a trial continuance, based largely on his ongoing investigation into the authenticity of the photograph. The motion to continue trial stated, in pertinent part:

> 1. The discovery provided by the government contained a photograph of the bank robbery suspect from the bank surveillance camera. It is Mr. Thomas' contention that the suspect in the bank surveillance photograph is not him.
>
> 2. Undersigned counsel is in the process of hiring a photography expert that will be able to match the photograph of Mr. Thomas and superimpose it on the photograph of the bank robbery suspect and determine if Mr. Thomas is in fact the individual who robbed the bank.

(Court File No. 29, p. 1).

The record does not indicate Petitioner's counsel acted deficiently with respect to the

9

allegedly altered photograph. Rather, it shows counsel examined the evidence and pursued Petitioner's suspicions by seeking an expert's opinion. That the expert did not ultimately testify for Petitioner at trial suggests not ineffective assistance of counsel, but that what the expert would have had to say would not have been favorable to Petitioner. This conclusion is corroborated by the fact Officer Hennessee, who had interacted with Petitioner many times before the robbery, viewed the original surveillance video tape immediately after the robbery and identified Petitioner as the man shown. Additionally, Petitioner's identity as the robber was corroborated by testimony of the teller. Thus, even assuming counsel was deficient in investigating the authenticity of the photograph, which he was not, Petitioner cannot show his defense was prejudiced by any such deficiency.

Accordingly, the Court holds Petitioner's claims regarding his counsel's investigation of the photograph do not support relief under § 2255.

### C. Failure to Locate an Alternate Version of the Surveillance Video

In his third claim for relief, Petitioner claims his "[c]ounsel failed to conduct pretrial discovery. Had counsel done so, he would have learned prior to trial that the video-surveillance of the Robbery that was turned over to the defense was not related to Movant's case. Further, counsel did not compel the Government to turn over actual surveillance tape of the Credit Union, which was exculpatory proof that Movant was not the perpetrator of the robbery" (Court File No. 71, p. 8).

Petitioner has provided no factual support for the allegation the surveillance video given to counsel – which appeared to show Petitioner robbing the credit union – was not actually footage of the credit union robbery. Moreover, Petitioner's claim the "actual" surveillance tape is exculpatory is flatly contradicted by the record, which shows Officer Hennessee viewed the surveillance footage at the scene immediately after the robbery and identified Petitioner as the perpetrator depicted.

10

Petitioner's bald allegation a tape exists somewhere which contains exculpatory evidence does not meet the high burden needed to establish a § 2255 claim. *See Bowers v. Battles*, 568 F.2d at 5.

Moreover, the affidavit of Mr. Martinez states he did, in fact, "conduct pretrial discovery on behalf of Mr. Thomas," and "reviewed all of the discovery" including "all of the bank photographs" (Court File No. 71, ¶ 5). The pretrial record likewise corroborates that Petitioner's counsel engaged in pretrial discovery, at one point even obtaining a trial continuance so he could further investigate the authenticity of the photograph obtained from the credit union surveillance tape. In short, Petitioner has demonstrated neither an act or omission by counsel which would be unreasonable by "prevailing professional norms," and which caused him prejudice. *Strickland*, 466 U.S. at 688.

Accordingly, Petitioner's claim regarding counsel's pretrial discovery vis-a-vis an allegedly exculpatory surveillance video does not support a finding of ineffective assistance of counsel.

### D. Violation of Petitioner's Speedy Trial Rights

In his fourth and final claim for relief, Petitioner alleges his "[c]ounsel impermissibly violated my Speedy Trial Rights, without my consent and over my objection" (Court File No. 71, p. 9).

The Court construes this claim as one alleging counsel was ineffective for failing to request the dismissal of the indictment due to pretrial delay. Petitioner's argument may be interpreted as arising under the provision of the Speedy Trial Act, codified at 18 U.S.C. §§ 3161 *et. seq.*, or under his Sixth Amendment right to a speedy trial, as he has not specified which provision he relies upon Therefore, the Court will address the claim as if it was raised under both the Speedy Trial Act and the Sixth Amendment.

#### 1. Speedy Trial Act

11

The Speedy Trial Act provides a federal criminal defendant's trial must commence within seventy days of the filing date of the information or indictment, or of the defendant's initial appearance, whichever comes later. 18 U.S.C. § 3161(c). The Act, however, contains a long list of periods of delay that are to be excluded in computing the time within which a trial must commence. These exclusions work to stop the clock, not reset it. Section 3161(h) of the Act specifically provides for the exclusion of the following pertinent periods of delay in computing the time within which the trial must commence:

> (1)(A) delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant; . . .
>
> (D) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion; . . .
>
> (3)(A) Any period of delay resulting from the absence or unavailability of the defendant or an essential witness.
>
> (B) For purposes of subparagraph (A) of this paragraph, . . . a defendant or an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at or being returned for trial. . . .
>
> (7)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting os such continuance outweigh the best interest of the public and the defendant in a speedy trial.

18 U.S.C. § 3161(h).

If the government fails to comply with the Speedy Trial Act, the indictment shall be

dismissed on the motion of the defendant. 18 U.S.C. § 3162(a)(2). In determining whether to dismiss a case with or without prejudice the court shall consider (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a reprosecution on the administration of the Speedy Trial Act and on the administration of justice. *See id*.

In the present case, Petitioner was not deprived of his right to a speedy trial. As explained in Mr. Martinez's affidavit, and as evident from the record, there were two delays leading up to Petitioner's trial: a delay following a motion to determine competency to stand trial, and a delay following a motion for continuance of trial in order further investigate the surveillance photograph and obtain testimony from Petitioner's alibi witness, Joseph Thomas, who was presently stationed in Europe with the Air Force. Both of these delays were consistent with the Speedy Trial Act.

Under the Speedy Trial Act, excluding certain delays, a defendant's trial must commence within seventy days of the filing of the indictment or a defendant's initial appearance, whichever comes later. In this case, defendant was indicted on January 13, 2004, but his initial appearance was not until January 26, 2004. On February 3, 2004, Petitioner moved for a competency examination, which motion was granted on February 5, 2004 (Court File Nos. 13, 15). Following Petitioner's evaluation, a Report and Recommendation finding Petitioner competent to stand trial was filed on August 23 2004, which this Court adopted on October 26, 2004 (Court File Nos. 23, 24). Pursuant to 18 U.S.C. § 3161(h)(1)(A), the delay from February 3, 2004 to October 26, 2004 caused by Petitioner's mental competency evaluation is excluded from the speedy trial calculation.

Following the resolution of Petitioner's mental competency proceedings, this Court set a trial date of December 20, 2004 (Court File No. 25). However, on December 14, 2004, Petitioner filed

a motion to continue trial in order to further investigate the authenticity of the credit union surveillance photograph, and to interview Petitioner's alibi witness, Joseph Thomas, who was currently stationed with the Air Force in Europe (Court File No. 29). The Court granted this motion on January 6, 2005, finding "the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial" (Court File No. 30). The Court set a new trial date of March 21, 2005, and later postponed this date by one week following Petitioner's filing a notice of alibi on March 15, 2005 (Court File No. 33). Petitioner's trial commenced on March 28, 2005. Pursuant to 18 U.S.C. § 3161(h)(7)(A), the delay from December 14, 2004 to March 21, 2005 resulting from Petitioner's request for more time to investigate the surveillance photograph is excluded from the speedy trial calculation.

Excluding the relevant periods of February 3, 2004 to October 26, 2004, and December 14, 2004 to March 21, 2005, the number of days between Petitioner's initial appearance and commencement of trial was sixty-four days. Because sixty-four days is below the Speedy Trial Act's seventy-day threshold, no violation of Petitioner's right to a speedy trial occurred. Accordingly, Petitioner is unable to demonstrate his attorney's performance was defective for failing to request his case be dismissed on the basis of the Speedy Trial Act. Thus, to the extent Petitioner's § 2255 claim is premised on the Speedy Trial Act, it must be denied as no speedy trial violation occurred.

### 2. Sixth Amendment Right to Speedy Trial

For the reasons explained below, Petitioner's argument also fails under the Speedy Trial Clause of the Sixth Amendment of the Constitution. The appropriate analysis for determining whether a defendant's right to a speedy trial has been denied requires the Court to apply a balancing

test which weighs the conduct of both the prosecution and the defendant. *See Barker v. Wingo*, 407 U.S. 514, 521 (1972) (analysis of Sixth Amendment speedy trial claims focus on length and reason for the delay of trial, and the resulting prejudice). The four factors the Court considers are (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Id.* at 530-32.

The length of the delay from the time Plaintiff made his initial appearance until commencement of his trial was fourteen months, and arguably, is not extraordinary or sufficient to trigger further inquiry. Even if it is sufficient to require further inquiry, however, the other factors weigh against Petitioner. Because the majority of the delay between his initial appearance and trial is attributable to two motions filed on Petitioner's behalf — a motion for a mental competency evaluation and a motion to continue trial to investigate possibly exculpatory evidence and secure the testimony of an alibi witness — the second factor weighs against him. In addition, Petitioner has failed to allege or substantiate how he was prejudiced by the delay in his trial. *See Barker*, 407 U.S. at 530-32. Furthermore, contrary to Petitioner's assertion counsel violated his speedy trial rights "without [his] consent and over [his] objections" (Court File No. 71, p. 9), Mr. Martinez's affidavit states Petitioner was consulted and he agreed to the filing of the motion to continue.

Consequently, the *Barker* factors weigh strongly against Petitioner and there is no specific evidence his defense was impaired. Accordingly, because the record does not indicate Petitioner's Sixth Amendment right to a speedy trial was violated, Petitioner is unable to demonstrate his attorney was ineffective for failing to pursue dismissal of the indictment based on an alleged violation of the Speedy Trial Clause. Thus, to the extent Petitioner's § 2255 claim is premised on the Sixth Amendment's Speedy Trial Clause, it must be denied.

## IV. CONCLUSION

None of the grounds asserted by Petitioner supports a finding his counsel's assistance was ineffective. For the reasons stated above, Petitioner's sentencing was not in violation of the Constitution or laws of the United States or otherwise subject to collateral attack, and the motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** (Court File No. 71).

In addition to the above, this Court **CERTIFIES** any appeal from this action would not be taken in good faith and would be totally frivolous. Therefore, any application by Petitioner for leave to proceed *in forma pauperis* on appeal is **DENIED**. Rule 24 of the Federal Rules of Appellate Procedure. Petitioner has failed to make a substantial showing of the denial of a constitutional right, *see* 28 U.S.C. § 2253; Rule 22(b) of the Federal Rules of Appellate Procedure, or reasonable jurists would disagree on the resolution of this matter, thus a certificate of appealability **SHALL NOT ISSUE**. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).

An Order shall enter.

**/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**